UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


CIGNA Health Corporation

         v.                              Civil No. 06-cv-116-JD

Donna K. Lencki


O R D E R


    CIGNA Health Corporation moves for an order under the
Federal Arbitration Act, 9 U.S.C. § 4 (the "FAA"), compelling its
former employee, Donna K. Lencki, to arbitrate the claim she
filed with the New Hampshire Department of Labor pursuant to
Revised Statutes Annotated ("RSA") 275:51.  Lencki objects.


Background

    The parties have agreed to the following background facts.
Compare Compl. ¶¶ 6-14 with Ans. ¶¶ 6-14.  Lencki worked as the
chief executive officer of Choicelinx, a New Hampshire
corporation acquired by CIGNA on August 1, 2005.  Prior to the
acquisition, Lencki and CIGNA entered into three separate letter
agreements, including what the parties now describe as an
"Employment Agreement" and a "Retention Bonus Agreement."[1]  The
Employment Agreement provided that, if CIGNA terminated Lencki
other than for cause before she became "eligible to participate

_____

[1]In support of her claim, Lencki does not rely on the third
agreement, dubbed the "Contingent Compensation Agreement."

in CIGNA's benefits programs," she would receive severance pay and certain other "post-termination benefits," including continued participation in certain insurance programs.  Compl. ¶ 9, Ex. B, at 2.  The Employment Agreement fixed Lencki's severance pay at $115,625, or 62.5% of her annual base salary, which was $185,000 before taxes.  Id., Ex. A, ¶ 7.

The Retention Bonus Agreement provided that CIGNA would pay Lencki the pre-tax sum of $63,750, with half of that payment due nine months after CIGNA's acquisition of Choicelinx or within ten days of her termination if Lencki's "job [were] eliminated and [her] employment [were] terminated" before then.  Compl. ¶ 9, Ex. C, at 2.  Lencki claims that CIGNA terminated her for a reason other than cause on December 30, 2005, a date before she became eligible to participate in CIGNA's benefits programs and less than nine months subsequent to the acquisition.

Lencki alleges that CIGNA initially refused to provide the severance pay and other benefits due under the Employment Agreement, or the balance of the bonus due under the Retention Bonus Agreement, "unless she first executed a general release of claims," although neither agreement held her to such a requirement.  Id. ¶ 3, Ex. A, ¶¶ 10, 12.  According to Lencki, CIGNA ultimately gave her the severance pay and the balance of the bonus, but has persisted in its refusal to confer the insurance benefits described in the Employment Agreement.

2

Lencki filed a wage claim with the New Hampshire Department of Labor on March 20, 2006, alleging that CIGNA violated various provisions of RSA 275:44 by demanding the release, failing to make prompt payment of the sums allegedly owed her under the agreements, and refusing to provide the insurance benefits.  She has requested $147,500 in damages, as well as an order requiring CIGNA to enroll her in the benefit programs for twice their promised duration, or, alternatively, to pay twice the cost of enrolling herself in comparable programs, as well as attorneys' fees and costs.  See RSA 275:44, I.  CIGNA responded to Lencki's wage claim by commencing the present action, invoking this court's diversity jurisdiction.  CIGNA seeks an order compelling Lencki to submit the claim to arbitration, to abandon the proceedings before the Department of Labor, and to pay its attorneys' fees and costs incurred in bringing this action.

Both the Employment Agreement and the Retention Bonus Agreement contain arbitration clauses.  The Employment Agreement states that Lencki is "subject to CIGNA's internal and external employment dispute resolution policies.  This means that as a final and mandatory step to resolution of any dispute regarding your employment, or cessation of employment, with CIGNA you agree to submit to binding arbitration instead of going to court."  Compl. ¶ 9, Ex. B, at 2.  Similarly, the Retention Bonus Agreement provides that "[i]f you have a dispute regarding the

terms of this letter, you agree that it will be resolved through the Company's internal dispute resolution program.  If the dispute is not resolved through the internal processes, you agree that your sole remedy is arbitration under the CIGNA's arbitration policy."  Id. ¶ 9, Ex. C, at 2.

CIGNA's "Employment Dispute Arbitration Policy," in turn, makes arbitration "the required and final means for the resolution of any employment related legal claim not resolved by [CIGNA's] internal dispute resolution processes."  Compl. ¶ 13, Ex. E, at 1 (footnote omitted).  By its terms, however, the

> policy covers only serious employment-related disagreements and problems, which are those that concern a right, privilege or interest recognized by applicable law.  Such serious disputes include claims, demands, disputes, controversies, or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Equal Pay Act, the Age Discrimination in Employment Act, the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Family and Medical Leave Act, theft of trade secrets, unfair competition and any other federal, state or local statute, regulation, ordinance, or common law doctrine, regarding employment discrimination, retaliation, whistle blowing, conditions of employment, trade secrets, unfair competition, or termination of employment.

Id., Ex. E, at 2.

4

Discussion

To compel arbitration under section 4 of the FAA, a party "must demonstrate 'that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by the clause, and that the claim asserted comes within the clause's scope.'" Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 552 (1st Cir. 2005) (quoting InterGen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003)).  Although Lencki's filing with the Department of Labor assailed the validity of the arbitration clauses found in her agreements with CIGNA, she does not press that contention here. See Mem. Supp. Obj. Mot. Compel Arb. at 5.  Instead, she contends that her wage claim falls outside the scope of those clauses.

"As with other issues involving the construction of individual employment contracts, in determining whether a contract requires arbitration, courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.'" Brennan v. King, 139 F.3d 258, 264-65 (1st Cir. 1998) (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)).  Here, the parties agree that New Hampshire law controls the interpretation of the arbitration clauses, though CIGNA points out that, notwithstanding such interpretive principles, "'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the

arbitration clause[s] [themselves] resolved in favor of arbitration.'"[2]  Id. at 264 (quoting Volt Info. Scis., Inc. v. Leland Stanford Jr. Univ., 489 U.S. 468, 475-76 (1989)).

Under New Hampshire law, an arbitration clause "'is to be interpreted so as to make it speak the intention of the parties at the time it was made bearing in mind its purpose and policy.'" John A. Cookson Co., 147 N.H. at 355 (quoting Dunn & Sons, Inc. v. Paragon Homes of New Eng., Inc., 110 N.H. 215, 217 (1970)). Where, as here, the parties have submitted no additional evidence of their intentions, the court considers the face of the claim at issue and the terms of the arbitration clauses themselves.  Id.

Lencki argues that the claim she filed with the Department of Labor does not constitute a "serious employment-related disagreement[] [or] problem[]."  She posits, and CIGNA does not dispute, that this language from the arbitration policy serves to limit the arguably broader terms of either the Employment Agreement or the Retention Bonus Agreement.  Her argument ultimately falters, however, because it ignores the definition of "serious employment-related disagreements and problems" found in the policy itself, i.e., "those that concern a right, privilege or interest recognized by applicable law."  This phrase is plainly broad enough to encompass Lencki's claim that CIGNA

---

[2]This point is largely academic, since New Hampshire recognizes the same presumption.  See John A. Cookson Co. v. N.H. Ball Bearings, Inc., 147 N.H. 352, 355 (2001).

violated RSA 275:44 by failing to provide her the benefits owed under the agreements promptly following the termination of her employment or at all (in the case of continued participation in CIGNA's insurance programs).  <u>See</u> <u>John A. Cookson Co.</u>, 147 N.H. at 355–56 (ruling that agreement in parties' contract to arbitrate "any dispute" extended beyond contract disputes to tort and statutory claims arising out of business relationship).

In an attempt to restrict the scope of this language, Lencki argues that the policy limits "serious employment–related disagreements and problems" to the types of "serious disputes" listed, <u>e.g.</u>, employment discrimination claims and the like.[3] But the policy says only that serious disagreements and problems "include" such claims; as the Supreme Court has noted, "the term 'includ[e]' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle." <u>Fed. Land Bank of St. Paul v. Bismarck Lumber Co.</u>, 314 U.S. 95, 100 (1941).  In any event, even if the list could be read as an exhaustive compilation of the kinds of "employment–related disagreements and problems" covered by the arbitration policy, the list includes claims under "any other . . . state . . . statute . . . regarding . . . termination of employment."

---

[3]Lencki does not argue that her claim is not "serious"; indeed, she has requested $147,500 in damages, as well as additional compensation for CIGNA's alleged refusal to provide the insurance benefits contemplated by the Employment Agreement.

RSA 275:44--which requires the prompt payment of an employee who is discharged, quits, resigns, or is laid off--is precisely such a statute.  Lencki provides no authority or developed argument to the contrary.  Her claim under RSA 275:44 therefore fits comfortably within the scope of CIGNA's arbitration policy and, in turn, within the scope of the agreements to arbitrate she made in the Employment Agreement and Retention Bonus Agreement.[4]  See Maroney v. Triple "R" Steel, Inc., 2005 WL 1950404, at *4 (N.D. Ill. Aug. 11, 2005) (ruling that arbitration clause covering claims "out of or connected with" employment agreement extended to ERISA claim although it "vested post-termination").  Lencki must therefore submit the claim to arbitration in accordance with the "Arbitration Rules and Procedures" referred to in CIGNA's arbitration policy.  9 U.S.C. § 4.

In addition to compelling Lencki to arbitrate her claim, CIGNA also seeks to enjoin her from further pursuing the claim before the Department of Labor.  Although the FAA authorizes a

---

[4]The court notes that the agreements appear to contemplate that CIGNA's "internal dispute resolution policies" serve as a precursor to arbitration.  Neither party, however, addresses whether they resorted to those policies here or, if they did not, what the court should nevertheless force the parties to arbitrate.  The court has therefore not considered the effect, if any, of the "internal dispute resolution policies" on the arbitration clauses.  Cf. HIM Portland Builders, LLC v. DeVito Builders, Inc., 317 F.3d 41, 43 (1st Cir. 2003) (upholding refusal to compel arbitration where "arbitration provision of the agreement [was] not triggered until one of the parties request[ed] mediation").

federal court to stay its own proceedings if they involve an issue subject to an arbitration agreement, 9 U.S.C. § 3, it does not provide for the stay of proceedings in other fora. <u>Great Earth Cos. v. Simons</u>, 288 F.3d 878, 893–94 (6th Cir. 2002). Neither CIGNA's moving papers nor its complaint cites any authority in support of its request to enjoin Lencki from prosecuting the claim she has filed with the Department. The same is true of CIGNA's request for attorneys' fees and costs, which the FAA itself also does not appear to authorize.

Thus, if CIGNA wishes to pursue either of these additional forms of relief, it shall file a memorandum of law to that effect by May 29, 2006. If Lencki wishes to file a response, she shall do so by June 8, 2006. For the moment, however, CIGNA's requests for an order preventing Lencki from pursuing her claim before the Department of Labor and for attorneys' fees and costs are denied without prejudice.

<u>Conclusion</u>

For the foregoing reasons, CIGNA's motion to compel arbitration (document no. 3) is GRANTED in part and DENIED in part. Lencki shall submit the claim she filed with the Department of Labor under RSA 275:51 to arbitration in accordance with the "Arbitration Rules and Procedures" referred to in CIGNA's arbitration policy. Should CIGNA wishes to pursue its

9

requests for an order preventing Lencki from prosecuting her claim before the Department of Labor and for attorneys' fees and costs, it shall file a memorandum of law to that effect by May 29, 2006.  If Lencki wishes to file a response, she shall do so by June 8, 2006.

      SO ORDERED.

                                Joseph A. DiClerico, Jr.
                                Joseph A. DiClerico, Jr.
                                United States District Judge

May 18, 2006

cc:  Mark T. Broth, Esquire
     William D. Pandolph, Esquire

10